UNITED STATE DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JUSTIN WONG,<br>          Defendant | Crim. No. 14-CR-30029-MGM |

**DEFENDANT'S SENTENCING MEMORANDUM AND MEMORANDUM IN SUPPORT OF HIS MOTION FOR VARIANCE OR DEPARTURE FROM THE UNITED STATES SENTENCING GUIDELINES**

**Defendant's Recommendation**

Mr. Wong asks this Court to sentence him to fifteen years (180 months), concurrent on all charges, followed by 5 years of supervised release.

**Argument**

I.     The Statutory Minimum Sentence of Fifteen Years is More than Necessary to Achieve the Goals of Sentencing

A.  An Unraveling

In 2002, a 53-year old woman walks into a café in Victoria, B.C. Canada. Her husband and son are not with her. They have no idea she is there. She is suffering from an undiagnosed mental illness. Over the last several years the woman has become increasingly paranoid. Where she was once close with her son, she has become distant. Her husband used to be able to assuage her symptoms to some degree, but on this day she can no longer tolerate the demons and she has resolved to end her life. Delusional and terrified that her husband would be blamed for her death if there were not witnesses, the woman continues through the café to the restroom and commits suicide by cutting her throat. Her husband is not implicated; her family is devastated.

Justin Wong was 19-years old when his mom took her life in this horrific fashion. By outward appearances, his childhood had been generally healthy and happy. Justin was loved and supported by his parents, he did not struggle in school or to make friends, and he was active in sports and band. Inside the home though, his mother increasingly struggled during his high school years. Whether because she was unable to accept that she needed help or because the whole family was in denial to some degree, her illness festered until it reached a terrible tipping point.

In the years after his mother's suicide, Justin married his high school girlfriend, Sarah Cooper, and poured himself into work. He had worked in restaurants since high school and rose steadily through various restaurant positions to become a chef and manager. The hours were extremely long, but the frenetic pace seemingly allowed Justin to bury the trauma of his mother's death. Things began to unravel for Justin in 2011 and 2012. His employer, Earls Restaurants, was demanding incredible hours from him and asking him to move to accept positions across Canada. Personally, he and Sarah were growing apart, but they were still married when he met Dana Walsh in 2012. Ultimately, Justin and Sarah divorced in late 2012 and he moved in with Dana. In the midst of all of this, Earls, unhappy that he was not able to maintain the excessively long hours through this personal tumult, let Justin go in December 2012 or January 2013. By the time police arrived on the doorstep of Dana's parents' home in Alvinston, Ontario, where he and Dana lived, in February 2013, Dana was nine months pregnant and he was not working in his profession at all. This was the context, though certainly not the excuse, for Justin's impulsive, incredibly immature, and grossly out of character conduct on those terrible days between December 16 and 20, 2012.

B.  Mr. Wong is exceedingly unlikely to ever commit another offense like this again

"Where the particular defendant convicted of a child pornography offense has a low potential for recidivism, particularly where that low potential is well informed by expert evaluations and the defendant's post-arrest conduct, the defendant has no significant prior criminal history, and where the defendant appears genuinely remorseful about his crimes and aware of the harm that they cause, several courts have found little need to impose a full Guideline sentence to protect the public." *United States v. Beiermann*, 599 F. Supp. 2d 1087, 1112 (N.D. Iowa 2009) (Bennett, J.).

This Court may look to Mr. Wong's conduct during the extended period of time he was in the community in Canada post-indictment while he litigated extradition issues. He complied with all conditions of release set by the court in Canada, while continuing to work. Mr. Wong was able to reestablish his career in the restaurant industry, but also worked jobs in other industries so he could continue to meet his obligations to his family. Though his relationship with Dana did not survive, they remained friends as he continued to help support their child and encouraged her to move on to a relationship with a brighter future and she has now married a new partner. During this post-indictment period, after separating from Dana, Mr. Wong met and began a relationship with Callie Moillet. Though Mr. Wong was facing an incredibly difficult future, their relationship was at all times characterized by honesty about his situation. They maintained their relationship for a period of time after he was extradited, but as was perhaps inevitable, it was not sustainable. It is apparent by Ms. Moillet's words in the accompanying letter that Mr. Wong handled the transition from romantic relationship to friendship with grace and maturity.

Moreover, while the general perception is that sex offenders reoffend regularly, the reality is that recidivism rates are lower for sex offenders than for the general criminal population. See CTR. FOR SEX OFFENDER MGMT., OFFICE OF JUSTICE PROGRAMS, MYTHS AND FACTS ABOUT SEX OFFENDERS (August 2000). According to studies by the Bureau of Justice Statistics of the Department of Justice, and by the Canadian government, the vast majority of sex offenders do not re-offend. U.S. DEPT. OF JUSTICE, OFFICE OF JUSTICE PROGRAMS, BUREAU OF JUSTICE STATISTICS, RECIDIVISM OF SEX OFFENDERS RELEASED FROM PRISON IN 1994 (November 2003) (5.3% of 9691 sex offenders released from prison in 1994 were re-arrested for a new sex crime within three years). The Bureau of Justice Statistics found that 5.3% of sex offenders were rearrested for a sex crime within three years of release, while 68% of non-sex offenders were rearrested within three years of release.

Despite the low risk of recidivism, Mr. Wong has already committed himself to rehabilitation and treatment. He has participated in sex offender treatment at Wyatt Detention Center and he recognizes the need for continued counseling and treatment going forward. He does not ever want to harm any other person in this manner again.

C. The Sentence Recommended by the Defense is Consistent with Sentences Imposed on Defendants with Identical Charges, Even Cases that are arguably more egregious in nature.

In asking this Court to impose not more than the fifteen-year minimum mandatory for this crime, Mr. Wong is suggesting a sentence that is consistent with sentences imposed in the District of Massachusetts for identical charges. The facts and circumstances in many of these cases are arguably more egregious. The sentences imposed in comparison to the guideline ranges in each of these cases also demonstrate how profoundly unhelpful the guidelines are in these

kinds of cases. (See Argument II.C).  For example, this Court imposed only the minimum

sentence of fifteen years in the matter of *United States v. Derek Lecompte*, 16-cr-30050. In that

case the defendant raped minors and produced child pornography in the act. Though this Court

expressed some reservations about this sentence jointly recommended by the parties, it was

imposed. Lecompte's guideline range was 210 – 262 months. Similarly, this Court imposed an

agreed sentence of fifteen years in the matter of *United States v. Zach Sawyer,* 16-cr-30031. The

essence of Mr. Sawyer's case was similar in some ways to Mr. Wong's, involving (apparently

unsuccessful) solicitation of nude pictures from minors via a computer service, but also

presented some aggravating factors not present in Mr. Wong's case. Specifically, Sawyer

skipped out on bail, authorities believe that he may have been targeting boys across the country

for in-person contact through his job as a trucker, and he threatened to come to the homes of the

boys in this particular case. Sawyer's guideline range was 360 months to life.

Other cases involving online solicitation of the production of child pornography with

aggravating factors not present in this case have yielded sentences somewhat higher than the

minimum, though still well below the guideline range urged by the government. In *United State*

*v. Curtis Simoneau,* 16-cr-10300, Judge Sorokin sentenced the defendant to 17 years for

soliciting boys to send explicit photos through a messaging app by posing as a teenage-girl.

Evidence in the case suggested that the defendant had obtained images from approximately 150

boys. https://www.justice.gov/usao-ma/pr/framingham-man-sentenced-17-years-prison-sexually-

exploiting-approximately-150-boys (Guideline range, 262 – 327 months). Judge Gorton

sentenced Joseph Debrum, 15-cr-10292 to 18 years for, again, posing online as a teenage girl to

solicit explicit photos from seven minor girls. Debrum used the explicit photos to coerce the girls

into creating more images by threatening to expose them. He even sent one of the girl's mother

an explicit image of her daughter and threatened to expose her daughter is the mother refused to become his sex slave. https://www.justice.gov/usao-ma/pr/taunton-man-sentenced-18-years-child-enticement-and-child-pornography-charges. (Guideline range, Life). Finally, Judge Saris imposed a sentence of 20 years in the matter of *United States v. Joshua Dunfee,* 12-cr-10024, in which the defendant posed on Facebook as photographer to connect with the mother of a young girl and tricked her into posing with her child in an explicit manner by fraudulently claiming it was an audition for a $20,000 underwear modeling contract. https://www.justice.gov/usao-ma/pr/iowa-man-pleads-guilty-child-pornography-charges-moments-trial-begins (Guideline range, Life).

By comparison, and without minimizing their seriousness, the defendant's actions in this case do not warrant exceeding the already onerous and punitive fifteen-year mandatory sentence required by the statute. Mr. Wong has admitted to all of the allegations and he appreciates the harmfulness of his actions, which include communicating with the minor girls in this case in a degrading and vulgar manner. His actions, however, were limited in time and scope to a four-day period. An extensive investigation that included seizure and analysis of all of Mr. Wong's computer and personal devices and review of records from the app used to contact the girls yielded no evidence that he had ever solicited minors in this manner aside from this interaction or that he possessed or traded any other child pornography of any kind. Similarly, there is no evidence that Mr. Wong took any steps to travel to see these girls in person or ever had any intention of doing so. Finally, and most emphatically, there is no evidence that Mr. Wong has ever directly committed sexual violence on another person.

II.    Guideline Arguments

In light of the arguments below, Mr. Wong argues that his base offense level should be

37 and his guideline range should therefore be 210 to 262 months.[1]

A.    Use of a computer

Mr. Wong objects to application of the enhancement specified in U.S.S.G.

§2G2.1(b)(6)(B)(i-ii). The application of the enhancement specified in §2G2.1(b)(6)(i) is

illogical and should not be applied where it has the effect of rendering a significant mitigating

circumstance into an aggravating factor.[2] The second part of this enhancement, increasing the

guidelines range where a person uses a computer of computer app "to otherwise solicit

participation by a minor in [the] produc[tion]" of sexually explicit material, should also not be

applied. The blunt instrument that is the federal production of child pornography statute allows

conviction whether the material is produced in-person, thereby placing the minor in imminent

danger of horrific sexual and physical violence or via computer or app under circumstances in

which there is no evidence that the defendant has or ever intends to try and gain physical access

to the child. While this distinction is irrelevant on the question of guilt, it is a meaningful

distinction to make when weighing possible sentences. The use of this enhancement in a case

involving online, non-contact, inducement of a minor to create of themselves material legally

defined as child pornography perversely raises a defendant's guideline range even though there

is less (if any) risk that the minor was or could have been subjected to immediate physical and

sexual violence in the making of the image.

---

[1] Mr. Wong withdraws the objection to ¶72.
[2] The first part of this enhancement clearly involves soliciting the minor to travel across
interstate lines to create child pornography. That does not apply here.

Mr. Wong further argues that the enhancement specified in §2G2.1(b)(6)(ii) is inapplicable to this case. This provision states that the enhancement should be applied if a computer or computer service is used "to solicit participation *with* a minor in sexually explicit conduct." This is appropriately applied in circumstances in which a defendant uses the computer application to arrange an in-person opportunity to produce child pornography *with* the minor. That is not the case here. This enhancement should not be applied in the calculation of the guidelines.

B.  <u>Repeat and dangerous sex offender.</u>

Mr. Wong objects to application of the enhancement specified in U.S.S.G. §4B1.5(b)(1). Mr. Wong objects to the application of this enhancement where the pattern involves *all* conduct associate with the instant offense, which occurred throughout ongoing online conversations that occurred over a brief 5-day period of time. Though law enforcement seized and searched several computers and devices, there is no evidence that Mr. Wong engaged in similar conduct resulting in production of child pornography with any other minors before or after these acts. As such, the Court should decline to add this enhancement.

C.  <u>The sentencing guidelines range should be rejected because the guidelines for 18 U.S.C. 2251(a) are not based on empirical information regarding sentencing and is the result of Congress dictating increasingly high sentences for sex crimes</u>

Many courts have noted that the sentencing guidelines for child pornography offenses "are to a large extent, not the result of the Commission's 'exercise of its characteristic institutional role,' which requires that it base its determinations on 'empirical data and national experience,' but of frequent mandatory minimum legislation and specific congressional directives to the Commission to amend the Guidelines." *United States v. Henderson*, 649 F.3d 955, 962-63 (9th Cir. 2011). In *Kimbrough v. United States*, the Supreme Court noted that the

United States Sentencing Commission was established "to formulate and constantly refine national sentencing standards," and to make sentencing determinations based "on empirical data and national experience, guided by a professional staff with appropriate expertise." 128 S.Ct 558, 574 (2007). The Court stated, however, that if guidelines are not formulated "using an empirical approach," but are instead based, for example, on directives from Congress to the Sentencing Commission to simply raise guideline ranges, then those guidelines should be given less weight by sentencing judges. In sum, where guidelines are *not* formulated using "empirical data and national experience," it is not an abuse of discretion for a district court judge to conclude that application of that guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case." Id. at 575. Thus, under *Kimbrough*, "district courts may vary from the child pornography Guidelines, § 2G2.2, based on policy disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case." *Henderson*, 649 F.3d at 963 (internal citations omitted); *United States v. Dorvee*, 616 F.3d 174, 188 (2d Cir. 2010); *United States v. Brooks*, 628 F.3d 791, 799 (6th Cir. 2011).

Many sentencing courts have taken this directive and departed or varied downward from the Guidelines in child pornography cases. See, e.g., *United States v. Marshall*, 870 F. Supp. 2d 489 (N.D. Ohio 2012) (varying downward from 151-month bottom of Guidelines to statutory mandatory minimum of sixty months, while criticizing mandatory minimum); *United States v. Phinney*, 599 F. Supp. 2d 1037 (E.D. Wis. 2009) (sentencing defendant to six months where Guideline range was 37-46 months); *United States v. Grinbergs*, 2008 WL 4191145 (D. Neb. Sep. 8, 2008) (sentencing defendant to year and one day where Guideline range was forty-six to fifty-seven months).

There is no question that the guidelines and mandatory minimum for violations of 18

U.S.C. §2251(a) were promulgated in response to statutory directives. For instance, in 2003,

Congress passed the "PROTECT Act," P. L. 108-21, which increased the mandatory minimum

term of imprisonment from ten to fifteen years for violations of 18 U.S.C. § 2251. In response,

the Sentencing Commission increased the base offense level of § 2G1.1 from level 27 to level

32. Amendment 664, Supplement to Appendix C – Sentencing Guidelines Manual, p. 60. The

Commission frankly acknowledged that the increase was necessary so that the "base offense

level will ensure that the 15-year minimum mandatory will be met by the Chapter Two

calculations in almost every case." Earlier, in 1996, the Commission increased the base offense

level from 25 to 27 in order to implement "congressional directives in section 2 of the Sex

Crimes Against Children Prevention Act of 1995, Pub. L. 104-71, 109 Stat. 774," see

Amendment 537, Appendix C, vl. I, p. 471. Consequently, the guidelines for child exploitation

offenses are not worthy of the deference that empirically-based guidelines warrant. The guideline

has been repeatedly increased at the direction of Congress, as were many of the guidelines

pertaining to sex crimes. In *United States v. Shipley*, 560 F. Supp. 2d 739 (So. Dist. Iowa 2008),

Chief Judge Robert Pratt commented on the guidelines in a case involving receipt of child

pornography:

> The Protect Act directly amended guideline 2G2.2 by amending the guideline
> enhancements for specific offense characteristics. These modifications do not
> appear to be based on any sort of empirical data, and the Court has been unable
> to locate any particular rationale for them beyond the general revulsion that is
> associated with child-exploitation-related offenses. See Skye Phillips, Protect
> Downward Departures: Congress and Executive's Intrusion into Judicial
> Independence, 12 J.L. & Pol'y 947, 967-84 (2004) (discussing the history of
> the guideline modifications made in the Protect Act and the fact that the
> changes were made without notifying or consulting the Sentencing
> Commission), see also *United States v. Detwiler*, 338 F. Supp. 2d 1166, 1170-
> 71 (D. Or. 2004) (discussing the Feeney Amendment to the Protect Act).

*Shipley* at 744 (emphasis added).

**Conclusion**

Mr. Wong stands before this Court filled with remorse and shame. He is keenly aware of the harm he caused these girls, himself, and those who love and support him. He asks that this Court impose not more than the minimum sentence of fifteen years, as a sentence of that length is sufficiently retributive of his conduct and far exceeds what the evidence shows is needed to achieve goals of incapacitation, deterrence, and rehabilitation.

Respectfully Submitted,
Justin Wong, DEFENDANT,
By his attorney,

/s/Marissa Elkins
Marissa Elkins, Esquire, BBO#668840
31 Trumbull Rd. Suite B
Northampton, MA 01060
melkins@elkinslawllc.com
(413) 341-2131

Certificate of Service
I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 18, 2018.

/s/Marissa Elkins